# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON REHEARING

## NO. 03-13-00820-CV

**City of El Paso, Texas, Appellant**

**v.**

**Greg Abbott, Attorney General of Texas and Stephanie Townsend Allala, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT
### NO. D-1-GV-12-001731, HONORABLE ORLINDA NARANJO, JUDGE PRESIDING

## O P I N I O N

We withdraw our opinion and judgment of August 1, 2014, and substitute the following opinion and judgment in their place.

In this interlocutory appeal, appellant the City of El Paso challenges the district court's denial of the City's plea to the jurisdiction in a case brought under the Texas Public Information Act (PIA).[1] The City filed the suit seeking declaratory relief from compliance with an attorney general decision ordering the City to disclose certain information requested by appellee Stephanie Townsend Allala. *See* Tex. Gov't Code § 552.324 (authorizing suit against attorney general by governmental body that seeks to withhold information ordered disclosed by the attorney general pursuant to PIA). Allala intervened, seeking a writ of mandamus to compel

---

[1] The PIA is codified in the Texas Government Code. *See* Tex. Gov't Code § 552.001–.353.

the disclosure of the responsive documents. *See id*. § 552.321 (waiving sovereign immunity for requestor seeking mandamus to compel disclosure). During the pendency of its suit, however, the City decided to comply in full with the attorney general's decision and produced to Allala the responsive information in its possession. It then filed a plea to the jurisdiction to dismiss Allala's claim, arguing that it had complied with Allala's request in full. The Attorney General did not oppose the City's plea, but Allala did, and after two hearings on the issue, the district court denied the City's plea to the jurisdiction. For the reasons explained in detail below, we will reverse the district court's order denying the City's plea, render judgment that the district court lacks jurisdiction, and dismiss Allala's claim for mandamus relief.

**Background**

In September and October 2012, Allala made two public-information requests to the City of El Paso for various communications regarding public business of the City between the mayor, council representatives, the city manager, or some combination thereof, including any public-business communications that may have been conducted on the personal email accounts of these individuals. The City, following the procedures set forth in the PIA, *see id.* §§ 552.301–.309, asked the attorney general to issue advisory opinions regarding Allala's request, including whether the private emails responsive to Allala's requests were public information and, if so, whether those emails were excepted from disclosure under the PIA. The City argued in its requests that any responsive emails held on individuals' private email accounts cannot be considered "public information" under the PIA's then-current definition of that term because the emails were not in the

2

City's possession and were inaccessible to the City.[2]  In one opinion addressing both requests, the attorney general reasoned, in relevant part, that because the private emails requested by Allala "relate[] to the official business of a governmental body and [are] maintained by a public official or employee of the governmental body," the emails are within the scope of the PIA.  *See* Tex. Att'y Gen. OR2012-19216.  The location of public information, the attorney general explained, does not affect its status as public information.  *See id.*  The attorney general determined further that the requested emails were not subject to any exceptions to disclosure asserted by the City and, accordingly, informed the City that it must release the withheld information.  *See id.*

In response to the attorney general's decision, the City filed suit in Travis County seeking declarations that private emails are not "public information" under the PIA, private emails are excepted from disclosure under the PIA, the City "has compelling reasons to keep the documents at issue except[ed] from public disclosure," and the City is not required to release private emails.  *See* Tex. Gov't Code § 552.324 (authorizing declaratory-judgment action against attorney general for relief from compliance with a decision ordering it to disclose certain information).  Specifically, the City argued that the personal papers, emails, and effects of local-government officials and employees that are held independently from the governmental body are not subject to "open records searches" and do not meet the statutory definition of public information, thus the information is inaccessible to the City and not subject to the PIA.  The attorney general filed an answer opposing the City's arguments, and Allala intervened in the case, seeking an order of mandamus against the City to disclose all of the public information that she had requested.  *See id.* 552.321 (authorizing

---

[2]  *See* Act of May 29, 1995, 74th Leg., R.S., ch. 1035, § 2, sec. 552.002, 1995 Tex. Gen. Laws 5127, 5127–28 (amended 2013) (current version at Tex. Gov't Code § 552.002) (definition of "public information" in effect when Allala filed her requests for information.

3

mandamus action by requestor where the governmental body "refuses to supply public information or information that the attorney general has determined is public information that is not excepted from disclosure").

During the pendency of the City's declaratory-judgment action, the legislature amended the PIA's definition of "public information" to codify, the parties contend, the attorney general's long-held position that public information includes documents or other items created "by an individual officer or employee of a governmental body in the officer's or employee's official capacity and the information pertains to official business of the governmental body," regardless of where that information is located. *See* Act of May 24, 2013, 83d Leg., R.S., ch. 1204, § 1, sec. 552.002, 2013 Tex. Gen. Laws 3011, 3011–12 (codified at Tex. Gov't Code § 552.002).[3] According to the City, certain other matters affecting the City's efforts to withhold certain of the requested information had ceased to exist during the pendency of its PIA suit. Accordingly, the City decided to withdraw its challenge to the attorney general's decision and, on September 16, 2013, released to Allala all remaining responsive documents that were in its possession.

After releasing the documents, the City filed a plea to the jurisdiction, arguing that its release of the requested documents in its possession had mooted all claims, thus depriving the district court of jurisdiction, and that its case should be dismissed accordingly. In support of its plea to the jurisdiction, the City attached the affidavit of its city manager, Joyce Wilson, who testified that after conducting "a diligent search for information," the City had gathered and turned over "all [responsive] information accessible to the city or within the city's control," including

---

[3] Because the issue is not before us here, we do not address the effect of the Legislature's 2013 changes to the definition of "public information."

information voluntarily disclosed by current and former city officials in response to Wilson's request for such information.

The attorney general did not oppose the City's plea. Allala, however, filed a response to the City's plea objecting to Wilson's affidavit and requesting a continuance to allow Allala to conduct discovery related to both the City's plea and to the merits of Allala's mandamus request. Specifically, Allala argued that before dismissing her petition as moot based solely on the City's assertion that it has provided all the information in its possession, she should be allowed to depose certain of the individuals identified in her information request to determine whether those named individuals have records responsive to her request—i.e., emails relating to public business located on private email accounts—that were not provided to the City or disclosed pursuant to the attorney general's decision. Allala pointed out, supported by her own affidavit, that the City had failed to produce certain attachments for the emails that it had produced and that, as shown by the City's responses to requests for admission, the City had redacted personal email addresses from certain emails. Allala also attached an email, provided to Allala by the City, from city councilman Steve Ortega to Wilson, in which Ortega stated that he would "not be turning over any of [his] private emails." Finally, Allala asserted that, regardless, the City's evidence in support of its plea to the jurisdiction was not sufficient to prove mootness as a matter of law.

At the first hearing on the City's plea to the jurisdiction, the district court sustained Allala's objection to Wilson's affidavit,[4] but decided to postpone a decision on the City's plea to allow Allala time to conduct "limited discovery." A few weeks later, the City filed a supplemental

---

[4] The district court determined that the affidavit's statement regarding its "diligent search for information" was "conclusory."

5

plea to the jurisdiction, which in addition to addressing Allala's contentions regarding missing attachments, included three affidavits detailing the City's efforts in response to Allala's request for information and asserting that all responsive information possessed by or accessible to the City had been produced to Allala. At the second hearing on the City's plea, the parties resolved the issue relating to the missing email attachments, but Allala maintained her position regarding the redacted email addresses and the need for additional discovery to determine whether any responsive information existed outside the physical possession of the City. Allala did not offer any additional evidence to support her opposition to the City's plea. Counsel for former city council member Steve Ortega argued at the hearing that his client had since decided to produce responsive information and purported to offer an affidavit attesting to that decision, but that affidavit does not appear in the record before this Court. After taking the matter under advisement, the district court denied the City's plea to the jurisdiction, allowing Allala's claim for relief to proceed. It is from this interlocutory order that the City now appeals.

**Standard of review**

A plea to the jurisdiction challenges a trial court's authority to decide the subject matter of a specific cause of action. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004). Where, as here, the plea to the jurisdiction challenges the existence of jurisdictional facts—i.e., whether the City "refuses to supply public information or information that the attorney general has determined is public information," Tex. Gov't Code § 552.321—we consider evidence that the parties have submitted when necessary to resolve the jurisdictional issues raised. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000). In fact, in a plea to the jurisdiction, a party may present evidence to negate the existence of a jurisdictional fact alleged in

6

the pleadings, which we would otherwise presume to be true. *See Miranda*, 133 S.W.3d at 227. How we review a trial court's explicit or implicit determination of such a challenge depends on whether the jurisdictional fact being challenged overlaps with the merits of the complainant's claims. *See University of Tex. v. Poindexter*, 306 S.W.3d 798, 806 (Tex. App.—Austin 2009, no pet.). When, as here, the jurisdictional facts do implicate the merits, and the plea to the jurisdiction includes evidence, the trial court reviews the relevant evidence to determine if a fact issue exists. *See Miranda*, 133 S.W.3d at 228.[5] If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue is resolved by the fact finder at trial. *Id*. at 227–28. If the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id*. The trial court's determination in such a case is a purely legal one that we review de novo, indulging every reasonable inference and resolving any doubts in the plaintiff's favor. *Id*. at 228; *Poindexter*, 306 S.W.3d at 807.

Resolution of jurisdictional questions frequently entails, as it does here, construction of statutes, which itself presents a question of law. *See Texas W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 177 (Tex. 2012). When construing a statute, our primary objective is to ascertain and give effect to the legislature's intent. *TGS–NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011). To discern that intent, we begin with the statute's words. *Id*. "Where text is clear, text is determinative of that intent." *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433,

---

[5] If the challenged jurisdictional fact does not overlap the merits, the fact issue may be resolved by the trial court when resolving the jurisdictional issue, and its explicit or implicit fact-finding (or failure-to-find) may be challenged in the same manner as fact findings generally. *See Combs v. Entertainment Publ'ns, Inc*., 292 S.W.3d 712, 719 (Tex. App.—Austin 2009, no pet.).

437 (Tex. 2009). The words cannot be examined in isolation, but must be informed by the context in which they are used. *TGS–NOPEC*, 340 S.W.3d at 441. We rely on the plain meaning of the words, unless a different meaning is supplied by legislative definition or is apparent from context, or unless such a construction leads to "absurd results." *See City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008); *see also* Tex. Gov't Code § 311.011 ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage," but "[w]ords and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly.").

**Discussion**

The City challenges the district court's denial of its plea to the jurisdiction in three issues: (1) whether the City's voluntary production of all responsive information that it had access to when Allala's request was made, including private emails voluntarily turned over to the City in response to official requests for such documents from relevant individuals, mooted all claims related to the underlying PIA action; (2) whether the doctrine of sovereign immunity deprived the trial court of jurisdiction once the City "establishe[d] by jurisdictional evidence that [the City] ha[d] complied, to the extent of its ability," with the attorney general's decision; and (3) whether a requestor may continue to prosecute a mandamus action brought under the PIA when evidence establishes that the circumstances listed in PIA sections 552.321 and 552.324 do not exist. Because the City's uncontroverted jurisdictional evidence conclusively negated that it was "refusing to supply public information or information that the attorney general has determined is public information," *see* Tex. Gov't Code § 552.321(a) (waiving sovereign immunity for certain mandamus actions),

8

which formed the basis of Allala's request for mandamus relief, we will begin our analysis with the City's sovereign-immunity argument.[6]

**Sovereign Immunity**

The doctrine of sovereign immunity, which shields governmental entities' "improvident acts" against the litigation and judicial remedies that would be available if the same acts were committed by private persons, is well known and settled in Texas. *See Tooke v. City of Mexia*, 197 S.W.3d 325, 331–32 (Tex. 2006). Sovereign immunity deprives a trial court of subject-matter jurisdiction for lawsuits in which the state or certain governmental units have been sued unless the state consents to suit. *See Texas Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 620–21 (Tex. 2011) (per curiam); *Miranda*, 133 S.W.3d at 224. Sovereign immunity compels Texas courts to defer to the legislature as the gatekeeper controlling when and how citizens can sue their state government or its officers for their official acts. *See Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 695 (Tex. 2003) (noting that "the Legislature is better suited to balance the conflicting policy issues associated with waiving immunity") (citing, among other cases, *Texas Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 854 (Tex. 2002)). The legislature may consent to suits against the State by statute or resolution, but "legislative consent to sue the State must be expressed in 'clear and unambiguous language.'" *IT–Davy*, 74 S.W.3d at 853–54 (citing *General Servs. Comm'n v. Little–Tex. Insulation Co.*, 39 S.W.3d 591, 594 (Tex. 2001) and (quoting Tex. Gov't Code § 311.034; *University of Tex. Med. Branch v. York*, 871 S.W.2d 175, 177 (Tex.1994))).

---

[6] The Attorney General does not oppose the City's appeal and, consequently, did not file an appellate brief in response.

Allala's intervention in the underlying suit asserted a claim under PIA section 552.321, which waives sovereign immunity for requestors seeking a writ of mandamus to compel a governmental body to make information available for public inspection under certain circumstances:

> A requestor or the attorney general may file suit for a writ of mandamus compelling a governmental body to make information available for public inspection if the governmental body refuses to request an attorney general's decision as provided by Subchapter G or refuses to supply public information or information that the attorney general has determined is public information that is not excepted from disclosure under Subchapter C.

Tex. Gov't Code § 552.321(a) (footnotes omitted). Allala asserted in her pleading that she was entitled to mandamus relief under section 552.321 because "[t]he City of El Paso refused to disclose public information that the attorney general has determined is public information that is not exempt from disclosure." In support of her claim, Allala alleged that she had requested certain documents from the City, including private emails regarding official city business; the City withheld certain documents responsive to that request and sought an opinion from the attorney general; the attorney general issued a ruling determining that the information was public information subject to disclosure; and that instead of complying with that decision and producing the public information, the City filed a suit for judicial review of the attorney general's opinion. As such, Allala's pleading alleged facts that affirmatively demonstrated the district court's subject-matter jurisdiction over her claim. *See Miranda*, 133 S.W.3d at 226.

The City, however, after deciding to disclose and then disclosing the responsive information that it had been previously withholding, including various emails from private accounts that it had received from private individuals, filed a plea to the jurisdiction and submitted evidence

10

to controvert the jurisdictional facts supporting Allala's mandamus claim. *See Miranda*, 133 S.W.3d at 227–28 (movant in plea to jurisdiction, like movant in summary judgment, must assert and support with evidence that the trial court lacks subject-matter jurisdiction). The City argued that its voluntary disclosure of all responsive public information in its possession deprived the district court of jurisdiction over Allala's section 552.321 mandamus action. In support of its argument, the City attached the attorney general's opinion and three affidavits showing how it had fully complied with the PIA and the attorney general's opinion by making available to Allala all of the public information to which it had access.[7]

The City's first affidavit in support of its plea to the jurisdiction was from El Paso Assistant City Attorney Kristen Lynn Hamilton, who testified regarding the City's efforts to comply with Allala's information request. Relevant here, Hamilton testified that:

- Between receipt of Allala's request and September 17, 2012, the City searched for all responsive documents that "were held on the City's server" or that were "within the physical control of city employees and officials," including "all responsive documents that were held on the City's server . . . in the Microsoft Outlook file of each of the relevant persons from whom the requestor was seeking emails;

- On September 11, 2012, Hamilton "instructed each of the persons named in the request to gather all responsive documentation that was not held on the City's server";

- In response to the City's request to turn over responsive documents, certain individuals provided "e-mails that they retrieved voluntarily from their personal e-mail accounts," and those private emails "were included in the [City's] request to the Attorney General";

- After receiving Allala's second request, the City gathered "all responsive documents, including personal e-mails that were, at the time of the second request, in the possession of the City";

---

[7] The City filed four affidavits, but, as mentioned above, the district court sustained Allala's objection to Wilson's affidavit. Accordingly and because the City does not challenge this ruling on appeal, we have considered only the three unchallenged affidavits in our resolution of this appeal.

11

- The City included in its request for an attorney general opinion the private emails it had received from various individuals;

- During the pendency of the City's suit against the attorney general, the City "passed a resolution" requiring its officers, employees, and volunteers to use "City e-mail addresses to conduct all City business and to forward "any correspondence regarding City business that was stored on personal e-mail accounts" to the employees' City email account;

- Also during the pendency of the City's suit, the El Paso City Council "instructed that all documentation previously withheld, and subject to the lawsuit, was to be released to the public";

- In response to that directive, the City released "every document, electronic or tangible, that had been located in any City server[] or in the possession of any employee or official [that] had previously been withheld contrary to the determination of the Attorney General";

- On August 29, 2013, the El Paso City Manager sent a letter "requesting that each of the relevant persons provide any additional [responsive] personal e-mails that had not previously been turned over to the City";

- On September 16, 2013, the City produced the documents it received in response to the August 29 letter, including emails and statements from the targeted individuals that no responsive personal emails existed; and

- By September 17, 2013, the City had released to Allala all the information that was in the City's "possession," "custody or control," or that it had received from the named individuals.

The second affidavit, from the City's system administrator, described in detail the internal search for documents on the City's servers, including the Outlook mailboxes of the named individuals. The City's third affidavit in support of its plea to the jurisdiction was from its outside counsel Erin Higginbotham, who testified that she assisted Hamilton with Allala's request, including the release of all responsive documents that the City had previously sought to withhold. She also reiterated Hamilton's assertions regarding the City's requests to the named individuals to turn over to the City any responsive documents that exist on those individuals' private email accounts.

12

In sum, the City's jurisdictional evidence established that the City searched extensively for responsive documents, officially requested responsive documents from the individuals named in the request, and then ultimately produced to Allala all the documents that it had been able to locate and obtain. We conclude that this was sufficient to conclusively establish that the City was not "refusing to supply public information that the attorney general has determined is public information." *See* Tex. Gov't Code § 552.321(a). By its plain terms, the PIA's waiver of sovereign immunity for mandamus requires that the City be "refusing" to supply public information—here, the private emails of others. "Refuse" in this context means to "show or express a positive unwillingness to do or comply with." *Webster's Third New Int'l Dictionary* 1910 (2002) (defining verb "refuse"); *see The American Heritage Dictionary of the English Language* 1478 (5th ed. 2011) (defining "refuse" as "to indicate unwillingness to do, accept, give, or allow," and explaining that it "implies determination"). By comparison, the transitive form of the verb "fail," which the legislature has used, in similar contexts, by itself, *see, e.g.*, Tex. Occ. Code § 2051.457 ("fails to pay"), or in conjunction with "refuse," *see, e.g.*, Tex. Nat. Res. Code § 134.173 ("violates, fails, or refuses to comply"), means "to omit to perform" or "to leave undone." *See American Heritage Dictionary* at 634. Thus, under the plain language of section 552.321's waiver of sovereign immunity, a requestor must show that the governmental body is "unwilling" to supply public information. *See* Tex. Gov't Code § 552.321; *City of Rockwall*, 246 S.W.3d at 625–26 (asserting that courts should "rely on the plain meaning of the words, unless a different meaning is supplied by legislative definition or is apparent from context, or unless such a construction leads to 'absurd results'"); Tex. Gov't Code § 311.011 ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage," but "[w]ords and phrases that have acquired

13

a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly."); *see also Associates Fin. Servs. of Am., Inc. v. North Carolina Farm Bureau Mut. Ins. Co.*, 528 S.E.2d 621, 624 (N.C. Ct. App. 2000) (defining "refuse to renew" as "indicating an unwillingness to renew"); *but see Societe Internationale Pour Participations Industrielles Et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 207–08 (1958) (acknowledging definition of "refuse," but declining to apply where statute in question used the word in same sense as "fail"). The City's jurisdictional evidence conclusively shows that it searched extensively for the requested information, officially requested responsive documents from the targeted and relevant individuals on at least two occasions, and produced to Allala every responsive document that it found or received.

Our review of the PIA reveals no methods by which the City could compel the disclosure of public-information emails located on private email accounts, other than what the City did here—i.e., request the documents from the targeted individuals and change the City's policy regarding public business on private emails. In fact, other than requiring that the governmental body "promptly[8] produce public information for inspection, duplication, or both," Tex. Gov't Code § 552.221(a), the PIA provides no guidance regarding the efforts a governmental body must take to locate, secure, or make available the public information requested. Here, the City's jurisdictional evidence conclusively established that it was willing to supply the requested information and, to the extent that it located it or received it from the individuals named in the request, it actually had done

---

[8] Section 552.221 defines "promptly" as "as soon as possible under the circumstances, that is, within a reasonable time, without delay." *See* Tex. Gov't Code § 552.221(a); *see also id.* §§ 552.221(c) (requiring notification to requestor if information cannot be produced within ten days of request), 552.301(b) (requiring governmental body that seeks to withhold information to request attorney general decision within ten days of receipt of request for information).

14

so. Accordingly, the City asserted and supported with evidence that the trial court lacked subject-matter jurisdiction. *See Miranda*, 133 S.W.3d at 228.

Once the City established that it was not "refusing to supply public information," the burden shifted to Allala "to show that there is a disputed material fact regarding the jurisdictional issue." *See id.* Allala, however, did not controvert or object to the City's jurisdictional evidence discussed above;[9] instead she responded that her claim was that the City "did not disclose all of the public information she requested as required" and, therefore, she should be allowed to take "targeted" depositions to determine whether the individuals named in her request had turned over responsive private emails to the City. She also emphasized that, under Local Government Code sections 201.005 and 201.006, any documents responsive to her request are the property of the City and must be turned over to the City. *See* Tex. Loc. Gov't Code §§ 201.005–.006(a). In support of this argument, Allala offered, among other items, an email from former council member Steve Ortega stating that, in response to the City's August 29 request for public information held on private email accounts, he will not produce any of his private emails. Allala also attached a copy of a newspaper article from the *El Paso Times* mentioning Ortega in connection with Allala's request:

> "I guess they can ask me for anything they want, but I'm not going to turn over anything unless there is a valid court order," Ortega said. "There is the Fourth Amendment that protects my personal effects. Certain standards have to be met in order for me to turn over my personal effects. When that standard is met I will turn them over."

---

[9] Allala argued in her response and supported with an affidavit that certain attachments to disclosed emails had not been produced, but the record indicates that the parties resolved this issue and that the attachments in question were disclosed. Allala does not contend otherwise on appeal.

Finally, Allala attached copies of emails from individuals named in her request that, she contends, show that those individuals had not turned over all responsive documents and, thus, the City's production of responsive documents was incomplete. In sum, Allala's response established that certain individuals may be in possession of emails that are responsive to her PIA request, that those individuals may be unwilling to turn over those emails, and that the City has not made those possibly-existing emails available to her. Therefore, Allala continued, she should be allowed to conduct discovery on the issue before the City's plea to the jurisdiction is granted.

Even assuming, as we must in this circumstance, *see Miranda*, 133 S.W.3d at 226 (requiring reviewing court to "indulge every reasonable inference and resolve any doubts in the nonmovant's favor"), that the City has not disclosed *all* responsive documents that exist—i.e., that private individuals continue to hold public information on their private email accounts—the bottom line for purposes of our appellate review of the City's plea to the jurisdiction is that Allala did not offer any evidence, or even argument, to controvert or question the City's conclusive evidence that it searched extensively for the requested documents, including officially informing each of the targeted individuals that they must turn over the requested information to the City, and turned over all those documents to Allala. Stated another way, Allala did not raise a fact question on the issue of whether the City was refusing or unwilling to supply the public information. The fact that a former city councilman has public information on his private email account that he has not provided to the City, despite multiple official requests by the City that he do so, does not reflect that the City is unwilling to disclose that information as it is required to do so under the PIA. *See, e.g., Thomas v. Cornyn*, 71 S.W.3d 473, 486 (Tex. App.—Austin 2002, no pet.) (citing *A&T Consultants, Inc. v. Sharp*, 904 S.W.2d 668 (Tex. 1995) (holding that predecessor statute to PIA does not require

16

governmental body to prepare or assemble new information in response to a request)); *Economic Opportunities Dev. Corp. v. Bustamante*, 562 S.W.2d 266, 268 (Tex. Civ. App.—San Antonio 1978, writ dism'd) (holding that a government agency could not be required to make copies of documents no longer in its possession); *see also* Tex. Att'y Gen. ORD–555 (1990) (stating that only information in existence is subject to disclosure).

Allala argues that section 202.005 of the Local Government Code gives the City a judicial means to obtain or recover the private emails at issue here:

> (a) The governing body may demand and receive from any person any local government record in private possession created or received by the local government the removal of which was not authorized by law.
>
> (b) If the person in possession of a local government record refuses to deliver the record on demand, the governing body may petition the district court of the county in which the person resides for the return of the record. If the court finds that the record is a local government record, the court shall order the return of the record.

Tex. Loc. Gov't Code § 202.005(a)–(b). We disagree. First, even an unanswered petition to the district court would not allow the agency to meet the short turnaround time demanded by the PIA. *See* Tex. Gov't Code § 552.301(b) (imposing ten-day limit on request for attorney general decision). Second, under its plain language, section 202.005 applies only where the local-government record at issue was removed without authorization. *See id.* § 202.005(a) ("the removal of which was not authorized by law"). On the record before us, there is no suggestion that private emails responsive to Allala's request were removed without authorization. Finally, even assuming that section 202.005 provides the City a means to access the private emails at issue here and disregarding any privacy issues that might arise, using it here as Allala suggests—i.e., either to compel the City to sue former employees or councilmen or to show that the City is refusing to produce the emails—would result

in the expansion of the PIA's specific waiver of sovereign immunity by grafting a discretionary Local Government Code provision that does not waive, or even concern, sovereign immunity. We are not authorized or willing to do this. *See* Tex. Gov't Code § 311.034 ("In order to preserve the legislature's interest in managing state fiscal matters through the appropriate process, a statute shall not be construed as a waiver of sovereign immunity unless waiver is effected by clear and unambiguous language."); *Taylor*, 106 S.W.3d at 696 (noting as settled proposition that statutory waiver of sovereign immunity must be by "clear and unambiguous expression of the Legislature's waiver of immunity").

For the reasons explained, we conclude that the City established as a matter of law that it was not refusing to supply public information and that Allala failed to raise a fact issue on that point. Thus, the district court lacked subject-matter jurisdiction over Allala's section 552.321 mandamus claim and should have granted the City's plea. *See Miranda*, 133 S.W.3d at 234 (allowing dismissal on plea to the jurisdiction where the jurisdictional evidence is undisputed and fails to raise fact issue). Accordingly, we sustain the City's first issue on appeal.

Having determined that the district court lacked jurisdiction under principles of sovereign immunity, we need not address the City's remaining challenges to the district court's denial of its plea to the jurisdiction.

**Allala's cross-point**

In a cross-point, Allala urges that the district court's denial of the City's plea to the jurisdiction was proper because the City withheld and continues to withhold certain email addresses from public disclosure. But, without addressing or expressing an opinion regarding whether the

18

email addresses at issue here fall under the PIA, we note that the attorney general's opinion directed the City to withhold the email addresses:

> Section 552.137 of the Government Code excepts from disclosure "an e-mail address of a member of the public that is provided for the purpose of communicating electronically with a governmental body," unless the member of the public consents to its release or the e-mail address is a type specifically excluded by subsection (c). Gov't Code § 552.137(a)–(c). The e-mail addresses you have marked, and the additional e-mail addresses we have marked, are not a type specifically excluded by section 552.137(c). *Therefore, the city must withhold the marked e-mail addresses under section 552.137, unless the owners affirmatively consent to their release.*

(Emphasis added.) Given this directive, the City cannot be said to be "refusing to supply public information that the attorney general has determined is public information." Accordingly, we overrule Allala's cross-point.

## Conclusion

Having determined that the trial court erred by denying the City's plea to the jurisdiction and having overruled Allala's cross-point, we reverse the district court's order denying the City's plea to the jurisdiction and render judgment granting the plea and dismissing Allala's claims.

 

_____

Jeff Rose, Justice

Before Chief Justice Jones, Justices Pemberton and Rose

Reversed and Rendered on Rehearing

Filed: August 29, 2014

19